E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SARAH SPIELBERGER (Cal. Bar No. 311175)
ALEXANDRA MICHAEL (Cal. Bar No. Pending)
Assistant United States Attorneys
General Crimes Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3358
    Facsimile: (213) 894-0141
    E-mail:   sarah.spielberger@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>       v.<br><br>CARLOS CORONA, et al.,<br><br>     Defendants. | No. 2:23-cr-00429-JFW-9<br><br>PLEA AGREEMENT FOR DEFENDANT<br>KAREN VANESSA MARTINEZ |

    1.   This constitutes the plea agreement between KAREN VANESSA MARTINEZ ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

    2.   Defendant agrees to/that:

        a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count thirty-three

of the indictment in United States v. CARLOS CORONA, et al., No. 2:23-cr-00429-JFW-9, which charges defendant with Laundering of Monetary Instruments, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 2(a), 2(b).

       b.   Not contest facts agreed to in this agreement.

       c.   Abide by all agreements regarding sentencing contained in this agreement.

       d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

       e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

       f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

       g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

       h.   Any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

       i.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all

of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

j.   Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

k.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

<u>THE USAO'S OBLIGATIONS</u>

3.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to

U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

NATURE OF THE OFFENSE

4.    Defendant understands that for defendant to be guilty of the crime charged in count thirty-three, that is, Laundering of Monetary Instruments, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), the following must be true:

a.    First, defendant conducted a financial transaction involving property that represented the proceeds of Bank Fraud, in violation of Title 18, United States Code, Section 1344(1);

b.    Second, defendant knew that the property represented the proceeds of some form of unlawful activity; and

c.    Third, defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds.

A "financial transaction" is a transaction involving: (1) the movement of funds by wire or other means that affects interstate or foreign commerce in any way; (2) one or more monetary instruments that affects interstate or foreign commerce in any way; or (3) the use of a financial institution that is engaged in or the activities of which affect interstate or foreign commerce in any way.

5.    Defendant understands that for defendant to be guilty of aiding and abetting the Laundering of Monetary Instruments, as charged in count thirty-three, in violation of 18 U.S.C. §§ 1956(a)(1)(b)(i) and 2(a), the following must be true:

a.    First, someone else committed the Laundering of Monetary Instruments;

4

b. Second, defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of the Laundering of Monetary Instruments;

c. Third, defendant acted with the intent to facilitate the Laundering of Monetary Instruments; and

d. Fourth, defendant acted before the crime was completed.

6. Defendant further understands that defendant may be found guilty of aiding and abetting the Laundering of Monetary Instruments, as charged in count thirty-three, in violation of 18 U.S.C. §§ 1956(a)(1)(b)(i) and 2(b), even if defendant did not personally commit the acts constituting the crime if defendant willfully caused an act to be done that if directly performed by her would constitute the crime of Laundering of Monetary Instruments. If defendant puts in motion or causes the commission of an indispensable element of the crime of Laundering of Monetary Instruments, she may be found guilty as if she had committed this element herself.

7. Defendant understands that for an individual to be guilty of Bank Fraud, in violation of Title 18, United States Code, Section 1344(1), the following must be true:

a. First, the individual knowingly executed or attempted to execute a scheme to defraud a financial institution of something of value;

b. Second, that the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

c. Third, the individual did so with the intent to defraud the financial institution; and

5

1        d.    Fourth, the financial institution was insured by the

2   Federal Deposit Insurance Corporation.

3        A "scheme to defraud" means any deliberate plan of action or

4   course of conduct by which someone intends to deceive or cheat, in

5   other words to deprive the victim of money or property by means of

6   deception.  It is not necessary for the government to prove that a

7   financial institution was the only or sole victim of the scheme to

8   defraud.  It is also not necessary for the government to prove that

9   the individual was actually successful in defrauding any financial

10  institution.  Finally, it is not necessary for the government to

11  prove that any financial institution lost any money or property as a

12  result of the scheme to defraud.

13       An "intent to defraud" means to act willfully and with the

14  specific intent to deceive and cheat.

15                        PENALTIES AND RESTITUTION

16       8.    Defendant understands that the statutory maximum sentence

17  that the Court can impose for a violation of Title 18, United States

18  Code, Section 1956(a)(1)(B)(i), is: 20 years' imprisonment; a 5-year

19  period of supervised release; a fine of $500,000 or twice the gross

20  gain or gross loss resulting from the offense, whichever is greatest;

21  and a mandatory special assessment of $100.

22       9.    Defendant understands that defendant will be required to

23  pay full restitution to the victims of the offense to which defendant

24  is pleading guilty.  Defendant agrees that, in return for the USAO's

25  compliance with its obligations under this agreement, the Court may

26  order restitution to persons other than the victims of the offense to

27  which defendant is pleading guilty and in amounts greater than those

28  alleged in the count to which defendant is pleading guilty.  In

6

particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is approximately $197,299.50, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

10.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

11.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that she is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral

consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

12.  Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

<u>FACTUAL BASIS</u>

13.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 15 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

a.  Beginning no later than October 14, 2020, and continuing through at least August 18, 2023, in Los Angeles County and Orange County, within the Central District of California, and

elsewhere, defendant conspired and agreed with co-defendants CARLOS
CORONA, JOSE LUIS EDEZA JR., JOHN WESLEY BESS JR., RICARDO OCHOA JR.,
SAULO SOLARES, CARLOS LUIZ ARELLANO, SOFIA GENESIS ALVAREZ, VANESSA
CORTES ARZATE, and RICARDO WILFREDO NICHOLSON (collectively, the "CO-
CONSPIRATORS"), to knowingly and intentionally commit bank fraud.
Specifically, defendant and the CO-CONSPIRATORS agreed to knowingly
execute a scheme to fraudulently obtain money owned by Bank of
America, N.A. ("BOA"), Citibank, N.A. ("Citi"), Wells Fargo, N.A.
("WFB"), JP Morgan Chase Bank ("Chase"), U.S. Bancorp ("USB"),
Kinecta Federal Credit Union ("Kinecta"), Navy Federal Credit Union
("NFCU"), and SchoolsFirst Federal Credit Union ("SchoolsFirst")
(collectively, the "Financial Institutions"), through materially
false and fraudulent pretenses, representations, and promises.
Defendant joined this conspiracy knowing of this object and intending
to help accomplish it.

b.   At all times during the conspiracy, BOA, Citi, WFB,
Chase, USB, Kinecta, NFCU, and SchoolsFirst were financial
institutions insured by the Federal Deposit Insurance Corporation
("FDIC").

c.   In furtherance of the conspiracy, co-defendant SOLARES
and others stole checks from the U.S. mail, including from mailboxes
and post office mail collection boxes located outside of U.S. Post
Office locations.  Co-defendants CORONA, EDEZA, BESS, and OCHOA, and
other co-conspirators, would then take possession of the checks that
co-defendant SOLARES and others stole.

d.   In furtherance of the conspiracy, defendant and co-
defendants CORONA, EDEZA, BESS, OCHOA, ARELLANO, ALVAREZ, CORTES
ARZATE, and NICHOLSON, and other co-conspirators, solicited bank

account holders through social media to provide their debit cards and
bank account information to defendant and her co-conspirators.  In
return, defendant and her co-conspirators promised these account
holders a cut of any fraudulent funds deposited into their accounts.
To circumvent the fraud protections of the Financial Institutions,
defendant and her co-conspirators specifically requested bank
accounts that had been open for a certain amount of time so that co-
conspirators could get access to the stolen funds more quickly.  Once
bank account holders responded to the advertisements via social media
and provided the information requested in the advertisements,
including bank account numbers, PIN numbers, and online banking log-
in information, defendant and co-defendants CORONA, EDEZA, BESS,
OCHOA, ARELLANO, ALVAREZ, CORTES ARZATE, and NICHOLSON also took
physical possession of the account holders' debit cards.  Defendant
and her co-conspirators then exchanged the debit cards and bank
account information obtained from the bank account holders with each
other.

          e.   In furtherance of the conspiracy, co-defendants
CORONA, EDEZA, BESS, and OCHOA, and other co-conspirators, deposited
the stolen checks into the bank accounts that had been sourced by
defendant and other co-conspirators.  In most cases, the stolen
checks were falsely endorsed in the original payee's name.  In doing
so, the co-conspirators falsely represented that they were the payees
on the checks and were entitled to the funds and concealed that they
were not the payees on the stolen checks and that they were not
authorized to deposit the checks or receive the payees' funds.  In
some cases, the checks were washed or altered to make the payee the

name of the owner of the bank account into which the checks were being deposited.

      f.   In furtherance of the conspiracy, after the stolen checks were deposited into the bank accounts described above, co-defendants CORONA, EDEZA, BESS, and OCHOA, and other co-conspirators, rapidly depleted the fraudulently deposited funds from the account holders' accounts by making cash withdrawals, electronic transfers, and/or debit card purchases.

      g.   Throughout the course of the conspiracy, to conceal the fraud, defendant and her co-conspirators instructed account holders to claim that their accounts had been compromised if contacted by the Financial Institutions about the fraudulent deposits.

      h.   Also in furtherance of the conspiracy, defendant and her co-conspirators committed at least the following acts:

      i.   On December 17, 2020, defendant sent co-defendant BESS an Instagram direct message stating that she was going to give the bank accounts that she had recruited to co-defendant BESS to deposit checks into because co-defendant CORONA was on vacation.

      ii.   On March 9, 2021, in response to defendant's Instagram direct message stating that it was "time to start scamming," co-defendant BESS said that he "hate[d] regular jobs."

      iii. On March 11, 2021, defendant sent co-defendant BESS an Instagram direct message stating, "Free Money Babes for me."

      iv.   On March 25, 2022, defendant posted an Instagram story depicting WFB debit cards and inviting followers to direct message her if they had WFB debit cards to use in the fraudulent scheme.

v.   On June 7, 2023, defendant posted an Instagram story stating that she was "picking up cards all day" and would split proceeds "50/50" and inviting followers to direct message her if they had debit cards from WFB, Chase, BOA, Bank of the West, Citi, USB, any credit union, or any bank account for at least six months.

vi.   On June 15, 2023, defendant posted an Instagram story depicting a stack of cash and inviting followers to direct message her if they "want to make some cash and have a bank account over 2 years [old]" or if they brought her an account.

**Accountholder UC-1**

vii. On November 9, 2021, in response to an undercover law enforcement officer's ("UC-1") Instagram direct message stating that UC-1 had a WFB account that was six years old, defendant explained that "it's basically about depositing checks into accounts and when it's done we split the money" and that, for example, UC-1 would make $6,000 if the co-conspirators deposited a $20,000 check into UC-1's account.

viii.   On November 15, 2021, defendant messaged UC-1 via Instagram and arranged for a co-conspirator to meet UC-1 on November 17, 2021, at a location on North Alameda Street in Los Angeles, California ("Alameda Street Address"), in order to pick up UC-1's WFB debit card.

ix.   On November 17, 2021, defendant sent UC-1 an Instagram direct message stating that a man driving a light green Toyota Prius would be meeting UC-1.

x.   On November 17, 2021, defendant sent UC-1 an Instagram direct message stating that the man was outside the Alameda Street Address.

xi.  On November 17, 2021, Co-Conspirator 2 arrived at the Alameda Street Address in a light green Toyota Prius, and UC-1 gave Co-Conspirator 2 an undercover WFB debit card ending in 3320 ("WFB Card 3320").

xii. On November 17, 2021, in Instagram direct messages, defendant asked UC-1 why WFB Card 3320 said "customer since 2021," and requested the PIN number for the card.

xiii.  On November 17, 2021, co-defendant CORONA tried to use WFB Card 3320 at a WFB ATM in Gardena, California.

xiv. On November 18, 2021, defendant sent UC-1 an Instagram direct message asking UC-1 to confirm the PIN number for WFB Card 3320.

xv.  On November 18, 2021, defendant told UC-1 in an Instagram direct voice message that "he" tried to use WFB Card 3320 the previous day but the card did not work and that "he" would try to use WFB Card 3320 again that night.

xvi. On November 18, 2021, co-defendant CORONA attempted to use WFB Card 3320 at a WFB ATM in Gardena, California.

xvii.  On November 18, 2021, defendant sent UC-1 an Instagram direct message with a photograph of a WFB ATM screen, which defendant explained "sa[id] invalid card."

**Accountholder E.P. (WFB Account 6740)**

xviii.  On February 28, 2021, using Instagram direct messages, co-defendants CORONA and SOLARES arranged for a co-conspirator to get stolen checks from co-defendant SOLARES to give to co-defendant CORONA, which included check no. 1162 from B.A.P. payable to R.A. in the amount of $6,767.

xix. On March 3, 2021, in response to defendant's

13

Instagram direct message stating that she was going to bring debit cards to him, co-defendant CORONA confirmed he was around.

xx.  On March 3, 2021, defendant delivered WFB Card 4140 to co-defendant CORONA.

xxi. On March 3, 2021, using Instagram direct messages, defendant sent co-defendant CORONA the name of E.P., "Wells," and the four-digit PIN number for WFB Card 4140.

xxii.  On March 3, 2021, co-defendant CORONA deposited check no. 1162 into WFB Account 6740 using WFB Card 4140 at an ATM in Compton, California.

xxiii.  On March 4, 2021, in response to defendant's Instagram direct message requesting it, co-defendant CORONA sent a photograph depicting an ATM receipt documenting that he had deposited check no. 1162 into WFB Account 6740.

xxiv.  On March 9, 2021, using Instagram direct messages, defendant sent co-defendant CORONA a screenshot from the WFB app showing that WFB Account 6740 had a balance of $6,761.57.

**Accountholder J.N.T. (WFB Account 6295)**

xxv. On April 7, 2021, using Instagram direct messages, defendant and co-defendant CORONA arranged for a co-conspirator to pick up WFB Card 6862 from J.N.T.

xxvi.  On April 7, 2021, defendant sent an Instagram direct message to co-defendant CORONA with the four-digit PIN number for WFB Card 6862.

xxvii.  On April 7, 2021, co-defendant CORONA deposited check no. 210895 from F.K. payable to V., Inc. in the amount of $18,967.50 into WFB Account 6295 using WFB Card 6862 at an ATM in Compton, California.

xxviii.   On April 7, 2021, using Instagram direct messages, co-defendant CORONA sent defendant a photograph depicting WFB Card 6862 and an ATM receipt documenting the deposit of check no. 210895 into WFB Account 6295.

xxix.   On April 8, 2021, using Instagram direct messages, defendant sent co-defendant CORONA a screenshot from WFB Account 6295 showing an available balance of $18,573.66, which indicated that check no. 210895 had cleared in WFB Account 6295.

xxx. On April 8, 2021, co-defendant CORONA withdrew $2,500 in cash from WFB Account 6295 at an ATM in South Gate, California.

xxxi.   On April 8, 2021, in response to co-defendant CORONA's Instagram direct message with a photograph depicting, among other things, a partially redacted ATM receipt documenting the April 8, 2021, withdrawal of $2,500 from WFB Account 6295 and a stack of $100 bills, defendant said, "Sheeesh good day."

**Accountholder J.L.P. (WFB Account 1858)**

xxxii.   On or before June 2, 2021, defendant caused WFB Card 6729 to be delivered to co-defendant CORONA.

xxxiii.   On June 11, 2021, using Instagram direct messages, defendant sent co-defendant CORONA a list of PIN numbers and the name of J.L.P., "Wells," and the four-digit PIN number for WFB Card 6729.

xxxiv.   On June 14, 2021, co-defendant CORONA deposited check no. 1249 from A.C. payable to H.W. in the amount of $16,025.53 into WFB Account 1858 using WFB Card 6729 at an ATM in Inglewood, California.

xxxv.   On June 14, 2021, using Instagram direct

messages, co-defendant CORONA sent defendant a photograph depicting the deposit of check no. 1249 into WFB Account 1858.

xxxvi.   On June 25, 2021, co-defendant CORONA withdrew $2,500 in cash from WFB Account 1858 at an ATM in Downey, California.

i.   Defendant admits that by engaging in the conduct and acts described above: (1) she knowingly executed and participated in a scheme to defraud the Financial Institutions of money; and (2) she did so with the intent to defraud the Financial Institutions. Defendant also admits that by engaging in the conduct and acts described above, her co-conspirators unlawfully obtained money from the Financial Institutions through false and fraudulent pretenses, statements, and representations, which had the natural tendency to influence the Financial Institutions to part with money.

j.   Defendant admits that over the course of the conspiracy, she: (1) attempted and intended to cause a loss of at least $1,489,381.68 to several of the Financial Institutions; and (2) caused an actual loss of $197,299.50 to Wells Fargo.

k.   Lastly, defendant admits that on April 8, 2021, in Los Angeles County, defendant and co-defendant CORONA, each aiding and abetting the other: (1) conducted a financial transaction affecting interstate and foreign commerce; (2) knowing that the property involved in the financial transaction represented the proceeds of bank fraud, in violation of Title 18, United States Code, Section 1344; and (3) knowing that the transaction was designed to conceal and disguise the nature, location, source, and ownership of such proceeds.

i.   Specifically, on April 7, 2021, co-defendant CORONA committed bank fraud by depositing check no. 210895 from V., Inc., which was stolen, in the amount of $18,967.50 into WFB Account 6295 using WFB Card 6862 at an ATM in Compton, California.  On April 8, 2021, co-defendant CORONA withdrew $2,500 in cash from WFB Account 6295 at an ATM in Los Angeles, knowing that this cash represented the proceeds of bank fraud and that the withdrawal was designed to conceal and disguise the nature, location, source, and ownership of the proceeds.

ii.   Prior to co-defendant CORONA depositing check no. 210895 into WFB Account 6295 and withdrawing $2,500 in cash from WFB Account 6295, defendant solicited the actual account holder of WFB Account 6295 (the "Account Holder") through Instagram and asked the Account Holder to provide the debit card and bank account information for WFB Account 6295.  Once the Account Holder provided defendant with the debit card and bank account information, defendant provided the debit card and bank account information to co-defendant CORONA so that co-defendant CORONA could deposit stolen checks, like check no. 210895, into WFB Account 6295 and make unlawful cash withdrawals, like the above-described $2,500 withdrawal on April 8, 2021.

iii. Defendant admits that by engaging in the conduct described above: (1) co-defendant Corona committed the crime of Laundering of Monetary Instruments, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), as charged in count thirty-three of the indictment; (2) defendant aided co-defendant CORONA with respect to at least one element of the Laundering of Monetary Instruments; (3) defendant acted with the intent to facilitate co-defendant CORONA's Laundering of Monetary Instruments; and (4) defendant acted before the crime was

complete.  Defendant further admits that with respect to count thirty-three of the indictment, the amount of money laundered was $2,500.

SENTENCING FACTORS

14.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

15.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Base Offense Level:

|  |  |  |
|---|---|---|
|  | 7 | U.S.S.G. §§ 2S1.1(a)(1), 2B1.1(a)(1) |
| More than $550,000 of Loss: | +14 | U.S.S.G. § 2B1.1(b)(1)(H) |
| Specific Offense Characteristics: |  |  |
| Conviction Under 18 U.S.C. § 1956: | +2 | U.S.S.G. § 2S1.1(b)(2)(B) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

16.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

17.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

18.  Defendant understands that by pleading guilty, defendant gives up the following rights:

        a.    The right to persist in a plea of not guilty.

        b.    The right to a speedy and public trial by jury.

        c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

        d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

        e.    The right to confront and cross-examine witnesses against defendant.

        f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

        g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

19.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

20.  Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 20 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $197,299.50; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised

1 release imposed by the Court: the conditions set forth in Second

2 Amended General Order 20-04 of this Court; the drug testing

3 conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the

4 alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

5      21.  The USAO agrees that, provided (a) all portions of the

6 sentence are at or below the statutory maximum specified above and

7 (b) the Court imposes a term of imprisonment within or above the

8 range corresponding to an offense level of 20 and the criminal

9 history category calculated by the Court.  The USAO gives up its

10 right to appeal any portion of the sentence, with the exception that

11 the USAO reserves the right to appeal the following: (a) the amount

12 of restitution ordered if that amount is less than $197,299.50.

13                   RESULT OF WITHDRAWAL OF GUILTY PLEA

14      22.  Defendant agrees that if, after entering a guilty plea

15 pursuant to this agreement, defendant seeks to withdraw and succeeds

16 in withdrawing defendant's guilty plea on any basis other than a

17 claim and finding that entry into this plea agreement was

18 involuntary, then (a) the USAO will be relieved of all of its

19 obligations under this agreement; and (b) should the USAO choose to

20 pursue any charge that was either dismissed or not filed as a result

21 of this agreement, then (i) any applicable statute of limitations

22 will be tolled between the date of defendant's signing of this

23 agreement and the filing commencing any such action; and

24 (ii) defendant waives and gives up all defenses based on the statute

25 of limitations, any claim of pre-indictment delay, or any speedy

26 trial claim with respect to any such action, except to the extent

27 that such defenses existed as of the date of defendant's signing this

28 agreement.

### RESULT OF VACATUR, REVERSAL, OR SET-ASIDE

23.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

### EFFECTIVE DATE OF AGREEMENT

24.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

### BREACH OF AGREEMENT

25.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

26.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
OFFICE NOT PARTIES</u>

27.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

28.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information

23

to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 15 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

29.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

30.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional

24

1  promise, understanding, or agreement may be entered into unless in a

2  writing signed by all parties or on the record in court.

3              PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

4        31.  The parties agree that this agreement will be considered

5  part of the record of defendant's guilty plea hearing as if the

6  entire agreement had been read into the record of the proceeding.

7  AGREED AND ACCEPTED

8  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
9  CALIFORNIA

10 E. MARTIN ESTRADA
   United States Attorney

11  *Alexandra Michael*   for
   _____          _____5/8/2024_____
12 SARAH E. SPIELBERGER                          Date
   Assistant United States Attorney

13 Signature:  *Karen Martinez*                  08/05/24
   _____          _____
14 KAREN VANESSA MARTINEZ                        Date
   Defendant  Email:

15
   _____          May 8, 2024
16 RICHARD W. RAYNOR                             Date
   Attorney for Defendant KAREN
17 VANESSA MARTINEZ

18 ///

19 ///

20 ///

21

22

23

24

25

26

27

28

1                      CERTIFICATION OF DEFENDANT

2          I have read this agreement in its entirety.  I have had enough

3     time to review and consider this agreement, and I have carefully and

4     thoroughly discussed every part of it with my attorney.  I understand

5     the terms of this agreement, and I voluntarily agree to those terms.

6     I have discussed the evidence with my attorney, and my attorney has

7     advised me of my rights, of possible pretrial motions that might be

8     filed, of possible defenses that might be asserted either prior to or

9     at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10    of relevant Sentencing Guidelines provisions, and of the consequences

11    of entering into this agreement.  No promises, inducements, or

12    representations of any kind have been made to me other than those

13    contained in this agreement.  No one has threatened or forced me in

14    any way to enter into this agreement.  I am satisfied with the

15    representation of my attorney in this matter, and I am pleading

16    guilty because I am guilty of the charge and wish to take advantage

17    of the promises set forth in this agreement, and not for any other

18    reason.

19    **Signature:** _Karen Martinez_                    08/05/24

20    KAREN VANESSA MARTINEZ                             Date
      Defendant **Email:** ▓▓▓▓▓▓▓▓▓▓

21

22    ///

23    ///

24    ///

25

26

27

28

                               26

1

CERTIFICATION OF DEFENDANT'S ATTORNEY

2      I am KAREN VANESSA MARTINEZ's attorney.  I have carefully and
3  thoroughly discussed every part of this agreement with my client.
4  Further, I have fully advised my client of her rights, of possible
5  pretrial motions that might be filed, of possible defenses that might
6  be asserted either prior to or at trial, of the sentencing factors
7  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
8  provisions, and of the consequences of entering into this agreement.
9  To my knowledge: no promises, inducements, or representations of any
10 kind have been made to my client other than those contained in this
11 agreement; no one has threatened or forced my client in any way to
12 enter into this agreement; my client's decision to enter into this
13 agreement is an informed and voluntary one; and the factual basis set
14 forth in this agreement is sufficient to support my client's entry of
15 a guilty plea pursuant to this agreement.

16

17 _____          May 8, 2024
   RICHARD W. RAYNOR                          _____
   Attorney for Defendant KAREN               Date
18 VANESSA MARTINEZ

19

20

21

22

23

24

25

26

27

28

27